**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **23-mj-130** |
| | : | |
| **LOUIS MARTIN,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to defendant Louis Martin's ("defendant") Emergency Motion for Temporary Release to Attend Grandson's Memorial Service. *See* ECF No. 20.

The United States opposes temporary release because, in view of the factors outlined in 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions that can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, even if the defendant's release is for a short period of time.

The evidence in this case is overwhelming and includes not only the defendant's admission that he committed the robbery, but high-quality surveillance video of the offense and his possession upon arrest of the tracked bank currency, distinct clothing, and firearm seen on the robbery video.  This case would represent the defendant's *third* armed bank robbery conviction in federal court.   He has a more than 40 year career of violent and firearm-related convictions and terms of incarceration, none of which deterred him from pointing a loaded semi-automatic gun at customers and employees to rob another bank.   The defendant poses a demonstrated danger to the public and risk of flight.

The nature of the offenses with which the defendant is charged, along with the weight of

the evidence and the defendant's characteristics, demonstrate that if released even temporarily, the defendant poses a clear and present danger to the community and that no condition, nor combination of conditions, would reasonably ensure the safety of the community or the defendant's presence in court.

## FACTUAL AND PROCEDURAL HISTORY

Shortly before noon on June 14, 2023, the defendant entered the TD Bank at 1924 8th Street, Northwest, pointed a loaded semi-automatic handgun at a bank teller, and ordered the employees to the back of the bank.



The bank employees complied with the defendant's demands and moved to a series of booth-style tables.   The defendant ordered the bank teller and assistant manager to open the cash drawers and demanded to know where the money was located.   He removed cash from two drawers totaling $1,244.00 in U.S. Currency equipped with a tracking device before exiting the bank as depicted on the video still below.



MPD officers began tracking the stolen "bait" currency in real time.   The location device

led them directly to the defendant at 7th and H Street NW, less than a half-hour after the robbery.

Upon arrest, the defendant was wearing the same clothing, including gray sweatpants, gray

sweatshirt, and shoes depicted on the bank surveillance video.



The defendant also possessed TD Bank's tracking device, U.S. Currency, and a 9 mm semi-automatic handgun consistent with the gun captured on the bank surveillance video with ten rounds in the magazine—seven of which were hollow point rounds—and none in the chamber.   After being advised of his *Miranda* rights, the defendant admitted during a custodial interview that he robbed the TD Bank at 1924 8th Street, Northwest earlier in the day.   He admitted that he owned the firearm recovered from his possession.   He further claimed to have used fentanyl in the past two days.

A background check revealed that the defendant was previously convicted of several crimes punishable by imprisonment for a term exceeding one year, including but not limited to Unlawful Possession of a Firearm in U.S. District Court for the District of Maryland (Greenbelt) in case number 13-cr-273 (PX) (*60 month sentence*), Armed Bank Robbery and Use of a Firearm in Connection with a Crime of Violence in U.S. District Court for the District of Maryland (Greenbelt) in case number 97-cr-44 (*63 month sentence*) and Armed Bank Robbery in U.S.

District Court for the Eastern District of Virginia (Alexandria) in case number 97-cr-389 (*48 month sentence*), and Unlawful Possession of a Firearm (Prior Conviction) in D.C. Superior Court case number 2006 CF2 023336 (*365 day sentence*).

On June 15, 2023, Magistrate Judge Upadhyaya signed a criminal complaint and arrest warrant charging the defendant with Armed Bank Robbery in violation of 18 U.S.C. § 2113(a) and (d); Unlawful Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1); and Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c).

At the initial hearing, the government orally moved for pretrial detention under 18 U.S.C. § 3142(f)(1)(A) (case involving a crime of violence), 3142(f)(1)(E) (felony involving possession of a firearm), and 3142(f)(2)(A) (risk of flight).   There is a presumption of detention under § 3142(e)(3)(B) upon a finding of probable cause for the charged offense under § 924(c) (possession of a firearm in furtherance of a crime of violence).   The defendant conceded pretrial detention.

The parties are engaging in plea negotiations. The case has yet to be indicted.

## LEGAL AUTHORITY AND ARGUMENT

The Bail Reform Act provides that "the judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." The defendant bears the burden of demonstrating that temporary release is warranted.   *United States v. Riggins*, 456 F. Supp. 3d 138, 149 (D.D.C. 2020) (CKK) (internal citations omitted). The defendant must show that they would be released to an appropriate person and that it is necessary for a compelling reason.   *Id.* "[C]ourts have granted relief on [this] basis only sparingly, typically in order to permit a

6

defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Thomas*, 456 F.Supp. 3d 69, 71–73 (D.D.C. 2020 (RDM) (quoted with approval *United States v. Avery Bost*, 22-CR-0083-6 (CKK) (Memo. Op. & Or., ECF No. 144 at 4–6).

In addition, the Bail Reform Act states that a judicial finding of probable cause that a defendant has committed certain types of offenses—including any offense charged under section 18 U.S.C. § 924(c), such as brandishing a firearm during a crime of violence—gives rise to a rebuttable presumption that the defendant constitutes a danger to the community and that no pretrial release condition or combination of conditions may be imposed to reasonably assure the appearance of the person as required or the safety of the community if he were released.  *See* 18 U.S.C. § 3142(e)(3)(B).[1]   There are four factors under Section 3142(g) that the Court analyzes in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  *See* 18 U.S.C. § 3142(g).

In addition, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted and the government

---

[1] Section 2113(a) does not trigger a rebuttable presumption of pretrial detention by itself.  *See United States v. Smoot*, No. 17-cr-137, 2017 U.S. Dist. LEXIS 111173, at *11-12 (D.D.C. July 18, 2017) (APM/GMH) (noting that the "government" was "mistaken" to claim that Section 2113 carried such a presumption, but detaining the defendant in any event in light of his extensive criminal history and charged bank robbery, even where the defendant was not armed).  "[A]rmed bank robbery under 18 U.S.C. § 2113(a) and (d) meets the definition of a crime of violence. Indeed, § 2113(d) provides an enhanced sentence for a person who during the commission of a bank robbery 'assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device.'"  *United States v. Burwell*, 160 F. Supp. 3d 301, 324 (D.D.C. 2016).

may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."  *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).  *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.  *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

## I.   <u>Nature and Circumstances of the Offense</u>

Pointing a loaded semi-automatic firearm at bank employees in broad daylight cries out for detention.  This Court has detained a defendant even where he was *unarmed* during a bank robbery because of the unique threat posed to customers and employees.  *See Smoot*, 2017 U.S. Dist. LEXIS 111173, at *13.   Here, the defendant's conduct was even more brazen.   The defendant pointed a loaded semi-automatic handgun at a bank teller, just as he has done on several prior occasions.   This Court has held that such conduct warrants pretrial detention, even where (unlike here) the defendant did not have a lengthy criminal history.  *See United States v. Fisher*, 183 F. Supp. 3d 167, 168–69 (D.D.C. 2016) (RCL) (detaining a defendant with no criminal history because of violence of armed bank robberies).   The charged conduct heavily favors detention.

## II.   <u>Weight of the Evidence against the Defendant</u>

The strength of the evidence is exceptional and includes not only video evidence, but an admission by the defendant that he committed the robbery after waiving *Miranda*.   Much like *Smoot*, the location device in the stolen cash led law enforcement directly to the defendant in less than a half-hour, and the defendant was wearing the articles of clothing and carrying the same gun seen on the robbery video.   Just as in *Fisher*, where the Court concluded that the weight of the

evidence "heavily" favored pretrial detention, "[a]n FBI agent is prepared to testify that a bank surveillance video ties the defendant to the robbery . . . [and] the defendant confessed to the robbery after he was taken into custody."   183 F. Supp. 3d at 169.

This Court recently highlighted the importance of weighing the strength of the case "as all factors."   *United States v. Blackson*, No. 23-cr-25 (BAH) 2023 U.S. Dist. LEXIS 18988, at *29–30 (D.D.C. Feb. 6, 2023) ("[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true.").   Similarly, here, the sheer weight of the evidence increases the prospects that the defendant will fail to appear and otherwise present a danger to the community.

## III.   The Defendant's History and Characteristics

### A.   Criminal History

The defendant has a disturbing history of violence spanning four decades, including two armed bank robberies, multiple burglaries, and three firearm felonies.   He has been incarcerated for most of his adult life.   The below chart describes his convictions in the last 25 years only.

| Convictions | Jurisdiction | Case No. | Date & Sentence |
|---|---|---|---|
| **Unlawful Possession of a Firearm**, 18 U.S.C. § 922(g)(1) | U.S. District Court for the District of Maryland (Greenbelt) | 13-cr-273 (PX) | September 26, 2014:<br><br>210 months imprisonment followed by 5 years of supervised release (vacated on appeal)<br><br>May 3, 2017:<br><br>Re-sentenced to 60 months followed by three years of supervised release. |
| **Unlawful Possession of a Firearm; APO (misdemeanor); Possession of Controlled Substance,** D.C. Code 22-4503, etc. | D.C. Superior Court | 2006 CF2 23336 | March 5, 2010:<br><br>365 days imprisonment |
| **Armed Bank Robbery,** 18 U.S.C. § 2113(a) and (d) | U.S. District Court for the Eastern District of Virginia | 97-cr-389 (AVB) | December 12, 1997:<br><br>48 months imprisonment; 3 years supervised release |
| **Armed Bank Robbery, Possession of a Firearm in Furtherance of a Crime of Violence,** 18 U.S.C. § 2113(a) and (d); 18 U.S.C. § 924(c) | U.S. District Court for the District of Maryland (Greenbelt) | 97-cr-44 (DKC) | January 7, 1998:<br><br>63 months for armed bank robbery (concurrent with EDVA sentence); 60 months for 924(c) (consecutive to EDVA sentence); followed by three years of supervised release<br><br>February 9, 2010:<br><br>**Supervised release revoked to 37 months imprisonment** |

The facts of his two prior armed bank robberies were alarmingly similar to the most recent armed bank robbery at TD Bank.   According to the Statement of Facts associated with his plea agreement in case number 97-cr-44, the defendant entered the Chevy Chase Bank in Maryland with a co-conspirator, wore a ski mask, brandished a semi-automatic handgun, and told the customers and employees in the lobby to "get on the floor."   He confronted a bank teller and "demanded that all drawers be opened and no alarms be pulled" before grabbing the money from the employee's drawer.   He made off with $18,700 in bait money equipped with a dye pack. According to the Statement of Facts in case number 97-cr-389, the defendant entered Signet Bank in Virginia, waved a silver pistol at bank employees, while his co-conspirator jumped the bank counter and grabbed $19,687 from multiple drawers.

The defendant has been incarcerated for much of the last 25 years.   Shortly after his release in his two federal armed robbery cases, he picked up an Unlawful Possession of a Firearm conviction in D.C. Superior Court (2006 CF2 23336).   He was released from the D.C. Jail in December 2012 and remained on supervised release until April 2015.   On April 30, 2013, in U.S. District Court for the District of Columbia case number 13-cr-127 (BAH), the defendant was charged by indictment with conspiracy to interfere with interstate commerce by robbery under the Hobbs Act (18 U.S.C. § 1951) and possession of a firearm during a crime of violence (18 U.S.C. § 924(c)) for conduct that allegedly occurred between February 26, 2013 and April 24, 2013. Following a detention hearing on May 7, 2013, Magistrate Judge Alan Kay held the defendant without bond pending trial.

Meanwhile, on May 29, 2013, a federal grand jury sitting in Greenbelt, Maryland returned an indictment charging the defendant with Unlawful Possession of a Firearm in case number 13-

cr-273.   The defendant *conceded* detention at his initial appearance.   While that case proceeded in Maryland federal court, the U.S. Attorney's Office for the District of Columbia moved to dismiss case number 13-cr-127 (BAH) without prejudice, noting that "the investigation against the defendant and possible co-conspirators . . . has broadened" and "additional investigative and evidentiary obstacles . . . make this case unable to proceed to trial at this time."   (ECF No. 28).

On April 10, 2014, a jury in Greenbelt found the defendant guilty of the sole count of FIP. On September 26, 2014, Judge Roger Titus sentenced the defendant to 210 months followed by five years of supervised release after concluding that the defendant was an armed career criminal and therefore qualified for a 15-year mandatory minimum.   The defendant appealed.   On September 16, 2016, the Fourth Circuit vacated the conviction and remanded the case for a new trial after finding that the district court improperly excluded a telephone conversation between the defendant and a third party, where the defendant claimed to have "stumbled up on" the firearm in his closet.   The Fourth Circuit further held that the defendant's Maryland robbery conviction no longer qualified as a predicate for armed career criminal purposes following *Johnson v. United States*, 135 S. Ct. 2551 (2015) and directed the district court to sentence the defendant within the ten-year statutory range set forth in Section 924(a)(2).   On January 23, 2017, the defendant pled guilty to the lone FIP count in the indictment.   On May 3, 2017, he was re-sentenced to 60 months followed by three years of supervised release.   His supervised release appears to have terminated before his arrest in this case.

The defendant's four most recent felony convictions make clear that the only thing that has deterred him from crime is incarceration.   His extensive criminal history spanning a lengthy period of time, including both federal and state crimes of violence, strongly favors detention.

**B.     Noncompliance with release conditions**

The defendant's performance on supervised release further supports pretrial detention. His supervised release was revoked to incarceration in one of his prior armed robbery cases (97-cr-44).   He also violated his parole in one of his Maryland state burglary cases and was ordered to complete the remainder of his 7-year sentence.   In light of his criminal history and noncompliance with release conditions, together with the instant offense where the defendant again robbed a bank at gunpoint with a semi-automatic handgun, he should not be released.

## IV.    <u>Danger to the Community</u>

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention.   As in *Smoot*, the defendant "has engaged in a pattern criminal behavior that demonstrates an alarming lack of concern for the well-being of others."   2017 U.S. Dist. LEXIS 111173, at *17.   Similarly, in *Fisher*, the Court noted that mere "threatened" use of a firearm in connection with a bank robbery "strongly suggest[s] his release would pose a danger to the community, particularly to employees and patrons of the bank."   183 F. Supp. 3d at 169.

Here, the defendant did not merely threaten to use a firearm, but *pointed* a loaded gun at bank employees, which easily could have escalated to the point of death or serious injury, particularly where, as here, the defendant's prior convictions show a predilection for violence. *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020).   The brazen conduct in this case and others over decades clearly demonstrates the danger to the community.   This factor heavily favors the defendant's detention without bond pending trial.

13

## V. Releasing the Defendant to the Custody of his Counsel is Not Appropriate.

The Bail Reform Act contemplates temporarily releasing a defendant from pretrial detention to a "United States marshal or other appropriate person." 18 U.S.C. §3142(i). D.C. Department of Corrections (DOC) policy for temporary release to a funeral "does not allow an inmate to attend a funeral without an escort of two (2) armed correctional officers or unrestrained." *See* Ex. A.[2] DOC considers the release of the defendant into the custody of his attorney a "deviation from the usual procedures" and raises significant security concerns. Ex. A at 1. DOC's policies, of course, are not binding on the Court. The government provides them to the Court as context to the seriousness with which the relevant agency approaches temporary release for a funeral.

The defendant's request stands in sharp contrast to DOC's preferred policies. The defendant requests to be released to attend the funeral "accompanied at all times" by his counsel and after a GPS electronic monitor is attached to his ankle. *See* Def. Em. Mot. for Temp. Rel. at ¶ 7.

The government recognizes defense counsel as an honorable member of the Bar and a zealous advocate for her client, but two armed guards she is not. In addition, the defendant could place defense counsel in an untenable position of potentially becoming a fact witness, or worse yet a mandatory reporter, of her client's potential violation of the Court's release order.

The death of Mr. Martin's grandson is tragic. Unfortunately, Mr. Martin is a danger to the community and should not be released, even temporarily, because there are no conditions,

---

2 DOC's letter, attached hereto as Exhibit A, also explains that DOC officers are not permitted to carry firearms in Maryland. So, DOC cannot temporarily release inmates to funerals in Maryland because DOC armed guards cannot accompany the inmate on release.

especially the proposed conditions, that can protect the community.

## CONCLUSION

The government respectfully requests that the Court issue an Order denying the defendant's motion for temporary release.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    /s/ *Colin Cloherty*
Colin Cloherty
D.C. Bar No. 1049877
Assistant United States Attorneys
601 D Street NW, Fifth Floor
Washington, D.C. 20530
Colin.Cloherty@usdoj.gov
(202) 815-8979

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel this 18th day of October 2023.

/s/
Colin Cloherty
Assistant United States Attorney

15